ORIGINAL

FILED
JUL 27 2005
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**VOLMAR CONSTRUCTION, INC.,**

Plaintiff,

- against - NO.____________________

**UNITED STATES OF AMERICA,**

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

**COMES NOW** Plaintiff, Volmar Construction, Inc. ("Volmar"), by its attorneys, Goldberg and Connolly, and hereby files this Complaint appealing a final decision of the Contracting Officer (the "Contracting Officer") of the Department of the Navy, Engineering Field Activity, Northeast, Naval Facility Engineering Command (the "Navy"), denying Volmar's certified claim ("Claim") duly presented and filed with the Contracting Officer on February 12, 2004 with respect to Contract N.62472-99-D-5403 for Facility Housing Maintenance/Repair – Mitchel Field (the "Contract"), and states as follows:

## JURISDICTION AND PARTIES

1. The United States Court of Federal Claims has jurisdiction to consider and determine this action pursuant to the Contract Disputes Act of 1978 U.S.C. §§ 601 - 613 and pursuant to 28 U.S.C. §1491.

2. This Complaint is timely as it is filed within twelve months of July 29, 2004, the date of the Contracting Officer's final decision denying Volmar's Claim.

3. Plaintiff, Volmar, is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Brooklyn, New York.

4. Defendant is the United States of America on behalf of the Department of the United States Navy, Naval Facilities Engineering Command.

## FACTUAL ALLEGATIONS

5. On or about August 30, 1999, the Navy awarded the Contract to Plaintiff.

6. The Contract was awarded on the basis of Plaintiff's response to competitive Solicitation N62472-99-B-5403 and three amendments thereto (the solicitation and the amendments are herein collectively referred to as the "Solicitation").

7. The Contract provided for services to be rendered over a base year ("Base Year") and two option years ("Option Year") and contained both Indefinite Delivery Line Items and Fixed Price Line Items. The Navy later exercised both Option Year quantities.

8. The Solicitation contained in § C.12.10 a representation that the "Data on the numbers and types of service calls for each classification that have historically been performed are included in Attachment J-C12.1." (hereinafter the "Attachment").

9. The Attachment, which §C.12.10 incorporated by reference into the Specifications was entitled "HISTORICAL DATA: FOR SERVICE CALLS" and stated that "The historical data in this attachment is taken from the activity's records for the family housing assets to be maintained under this contract. This data is included to indicate the types and approximate order of magnitude in the workload."

10. By Items 6 and 19 of Amendment 002 to the Solicitation dated April 28, 1999, the Defendant significantly increased the number of service calls in the Historical Data that was previously furnished ("Amended Historical Data").

11. During the course of its performance, Plaintiff experienced a significant increase in the number of service calls ("Additional Service Calls") over and above the Amended Historical Data furnished by the Defendant upon which Plaintiff relied upon to its detriment in establishing its fixed price proposal of the line items with respect to these service calls.

12. On February 12, 2004, Plaintiff submitted its certified claim seeking an equitable adjustment with respect to these Additional Service Calls in the amount of $227,633.00. (A copy of the Claim is annexed hereto as Exhibit A).

13. On July 29, 2004, the Contracting Officer issued her Final Decision denying Plaintiff's claim. (A copy of the Final Decision is annexed hereto as Exhibit B).

**COUNT ONE**

**THE FAILURE OF THE DEFENDANT TO PROVIDE PLAINTIFF WITH AN ACCURATE ESTIMATE OF THE NUMBER OF SERVICE CALLS TO BE PROVIDED UNDER THE CONTRACT WAS A BREACH OF ITS IMPLIED WARRANTY AND OBLIGATION TO FURNISH PLAINTIFF WITH AN ACCURATE AND COMPLETE SPECIFICATIONS**

14. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "13" of the Complaint as if fully set forth herein.

15. Defendant's failure to provide Plaintiff with a reasonable estimate of the number of Service Calls to be provided was a breach of its Implied Warranty and obligations to furnish Plaintiff with an accurate and complete specification.

16. The Plaintiff relied upon the Amended Historical Data furnished by the Defendant in preparation of its offer with respect to the Fixed Price Line Items under the Contract.

17. Plaintiff's reliance on the Amended Historical Data caused Plaintiff to underestimate the requirements under the Contract to its detriment.

18. By reason of the Defendant's breach of this obligation, Plaintiff is entitled to an equitable adjustment of the Contract Price in the amount of $227,663.00.

## COUNT TWO

**DEFENDANT'S SOLICITATION CONTAINED A MISREPRESENTATION OF THE NUMBER OF SERVICE CALLS PLAINTIFF WOULD BE REQUIRED TO RENDER UNDER THE CONTRACT**

19. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "18" of the Complaint as if fully set forth herein.

20. The Amended Historical Data contained in the Solicitation misrepresented the number of Service Calls Plaintiff would be required to render under the Contract.

21. The misrepresentation caused Plaintiff to underestimate the requirements under the Contract to its detriment.

22. By reason of Defendant's misrepresentations, Plaintiff is entitled to recover damages from the Defendant in the amount of $227,663.00.

## COUNT THREE

**THE DEFECTIVE ESTIMATES (AMENDED HISTORICAL DATA) FURNISHED BY DEFENDANT AND THE RESULTANT EXTRA WORK WERE A CONSTRUCTIVE CHANGE**

23. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "22" of the Complaint as if fully set forth herein.

24. The defective estimates furnished by the Defendant and the resultant extra work constitute a constructive change to the Contracting entitling the Plaintiff to an Equitable Adjustment of the Contract price.

25. By reason of the foregoing, Plaintiff is entitled to an equitable adjustment of the Contract price of $227,663.00.

## COUNT FOUR

### DEFENDANT'S ACTIONS OF FURNISHING PLAINTIFF INACCURATE DATA WAS A BREACH OF CONTRACT

26. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "25" of the Complaint as if fully set forth herein.

27. Defendant's actions of furnishing Plaintiff inaccurate data ("Amended Historical Data) was a breach of Contract.

28. By reason of the Defendant's breach of this obligation, Plaintiff is entitled to damages from Defendant in the amount of $227,663.00.

## COUNT FIVE

### DEFENDANT'S ACTIONS OF FURNISHING PLAINTIFF INACCURATE DATA WAS A BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

29. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "28" of the Complaint as if fully set forth herein.

30. Defendant's actions of furnishing Plaintiff inaccurate data was a breach of Defendant's implied covenants of good faith and fair dealing.

31. By reason of the Defendant's breach of this obligation, Plaintiff is entitled to damages from Defendant in the amount of $227,663.00.

**WHEREFORE,** Plaintiff respectfully requests this Court to grant judgment against the Defendant and grant the following relief:

On Count One, a declaration that Defendant's actions constitute a breach of its obligations to Plaintiff and award to Plaintiff an equitable adjustment of the Contract price in the sum of $227,663.00.

On Count Two, a declaration that Defendant's actions constitute a misrepresentation and award to Plaintiff damages in the sum of $227,663.00.

On Count Three, a declaration that Defendant's actions constitute a constructive change and award to Plaintiff an equitable adjustment of the Contract price in the sum of $227,663.00.

On Count Four, a declaration that Defendant's actions constitute a breach of contract and award to Plaintiff damages in the sum of $227,663.00.

On Count Five, a declaration that Defendant's actions constitute a breach of its implied covenants of good faith and fair dealing and award to Plaintiff damages in the sum of $227,663.00.

On all Counts, for interest and such costs and expenses and attorney's fees as are available under applicable law, and such other relief as this Court may deem necessary and proper under the circumstances.

Dated: Rockville Centre, New York
July 26, 2005

Respectfully submitted,

By: ______________________

Gary Marcus, Esq. (3853)
Goldberg & Connolly
Attorneys for Plaintiff
66 North Village Avenue
Rockville Centre, NY 11570
(516) 764-2800
(516) 764-2827 (Facsimile)

F:\users\bschneider\Gary Marcus\Legal Documents - 2\Volmar Complaint.doc

V C I

# VOLMAR CONSTRUCTION, INC.

4400 Second Avenue, Brooklyn, New York 11232-4213
Tele: (718) 832 – 2444 * (718) 832 – 2445
Fax: (718) 499 – 4045

February 12, 2004

**Via Certified Mail - Return Receipt Requested**

Mr. John Alberghini, Contracting Officer
Department of the Navy
NavFacEngCom Contracts
Building 135 - Box 26
Naval Submarine Base - New London
Groton, CT 06349-5026

Re: Contract No. N6472-99-D-5043 ("Contract") - Facility Housing Maintenance/Repair - Mitchell Field

Exhibit:
A. Schedule of Changes in Service Calls
B. Copy of Contracting Officer's March 6, 2002 Letter
C: Calculation of Damages
D. Certification of Claim

Dear Mr. Alberghini:

Please accept this letter and its attachments as the claim of Volmar Construction, Inc. ("Volmar") and its request for an equitable adjustment increasing the price for above referenced contract in the amount of $227,633.00 plus interest and claim preparation costs. Volmar's entitlement to the equitable adjustment requested herein is based upon a defective specification incorporated in the solicitation ("Solicitation") issued by the government and the resultant Contract. The Solicitation and Contract contained erroneous and/or misleading information concerning the level of effort that would be required under certain fixed price portions of the Contract. This erroneous and/or misleading information was in the form of "Historical Data" contained in Section J-C12.1 of the Solicitation and the Contract. Volmar's reliance on this erroneous and/or misleading government provided information caused it to substantially underestimate the level of effort required, which in turn cause Volmar to sustain substantial losses with respect to those fixed priced line items effected thereby.

Mr. John Alberghini, Contracting Officer
Department of the Navy
NavFacEngCom Contracts
February 12, 2004
Page 2

**FACTS**

On or about August 30, 1999, The Department of the Navy (hereinafter the "Navy" or the "Government") competitively awarded Contract N62472-99-B-5403 (the "Contract") to Volmar Construction, Inc. ("Volmar"). The Contract award was based upon Volmar's response to competitive Solicitation N62472-99-B-5403 and three amendments thereto herein ( the solicitation and the amendments are herein after collectively referred to as the "Solicitation"). The Contract which was administered by the Naval Submarine Base New London, Groton, CT. was to provide certain maintenance and repair services ("Services") for the Mitchel Housing Complex in East Meadow, New York. The Services were to be provided for a base year ("Base Year") and two option ("Option Years") years and contained both Indefinite Delivery Line Items and Fixed Priced Line Items. This claim concerns only three of the fixed priced line items for each contact year to wit: Line Items 001AY (Emergency Service Calls), 001AZ (Urgent Service Calls) and 001BA (Routine Service Calls) for the Base Year; Line Items 003AY (Emergency Service Calls), 003AZ (Urgent Service Calls) and 003BA (Routine Service Calls) for the First Option Year; and Line Items 005AY,(Emergency Service Calls), 005AZ a (Urgent Service Calls) and 005BA (Routine Service Calls) for the Second Option Year. (hereinafter collectively referred to as the "Line Items") (Emergency Service Calls, Urgent Service Calls and Routine Service Calls are hereinafter collectively referred to as "Service Calls").

The Solicitation was issued on March 31, 1999 and contained in Section C.12.10 a representation that the "Data on the numbers and types of service calls of each classification that have historically been performed are included in attachment J-C12.1." (hereinafter the "Attachment"). The Attachment, which Section C.12.10 incorporated by reference into the specifications of the Contract, was entitled "HISTORICAL DATA: FOR SERVICE CALLS" and stated that "The historical data in this attachment is taken from the activity's records for the family housing assets to be maintained under this contract. This data is included to indicate the types and approximate order of magnitude in the workload." The Attachment then specified that the "NUMBER OF SERVICE CALLS PER YEAR" were "EMERGENCY: 39, URGENT: 267: ROUTINE: 1500 . . ."

At sometime prior to April 28, 1999, one of the prospective bidders asked the Government the following question: "We noted that the service call information posted on the wall of the incumbent's Maintenance Office does not match the historical information in the

solicitation. Is there a reason for this disparity?" In item 19 of Amendment 0002 to the Solicitation, dated April 28, 1999, the Government responded "See Solicitation Amendment 0002, paragraph 1.d.6". Paragraph 1.d.6 significantly increased the Historical Data for the Service Calls previously furnished to the following: "EMERGENCY: 210, URGENT: 525: ROUTINE: 3100. . ."

Although the Historical Data was furnished on a yearly basis, the Contract Schedule required a bid for the Line Items on a monthly fixed price basis. The clear intention of the Government in furnishing this Historical Data to Volmar and the other bidders, as stated in the Attachment, was as a basis for estimating the "magnitude in the workload".

The Government by two subsequent Modifications to the Contract exercised its options for each of the two Option Year quantities. Volmar in compliance with the terms and conditions of the Contract diligently performed all three years of its obligations thereunder. During the course of its performance, Volmar experienced a significant increase in the number of Service Calls over the Historical Data furnished by the Government upon which Volmar relied in establishing its fixed price proposal for the Line Items To wit: In the Base Year it experienced: EMERGENCY: 219, URGENT: 793: ROUTINE: 3201. In Option Year I it experienced: EMERGENCY: 91, URGENT: 959: ROUTINE: 2850. In Option Year II it experienced: EMERGENCY: 75, URGENT: 1240: ROUTINE: 2615. Set forth as Exhibit A to this Claim is a chart that compares the quantity of Service Calls experienced by Volmar versus the Historical Data furnished by the Government and the percentage increase in Service Calls experienced by Volmar.

## ENTITLEMENT

The Substantial and Materially Erroneous and/or Inaccurate Information Furnished By The Government Constituted A Defective Specification and A Constructive Change To The Contract Whereby Volmar is Entitled to An Equitable Adjustment In the Contract Price to Compensate It For the Additional Service Calls.

The Historical Data contained in Attachment J-C12.1 was incorporated by reference into and became part of the Specifications and the Statement of Work by Section C.12.10. (See

above.) This was a design specification. As stated in *Aerodex, Inc.*, ASBCA 7121, 1962 BCA ¶3492 a design specification is one "in which (there) are stated precise measurements.....and other information. With regard to design specifications the Government accepts general responsibility for design and related omissions, errors and deficiencies in the specifications..." Furthermore Section C of the Contract which contains The Specifications and Statement of Work was drafted and prepared by the Government. As with any Government prepared design specification, the Government has the responsibility and the obligation to assure that those specifications are reasonably correct, adequate and feasible (see *Consolidated Diesel Electric Corp., 1967* ASBCA 125, 67-2 BCA 6669). The courts often time speak of this obligation as an implied warranty that is based on the drafter's responsibility for the specifications as opposed to any "superior knowledge". (see *U.S. v. Spearin*, 248 U.S. 132 (1918). Furthermore, when the government uses detailed drawings or specifications it is a clear indication of the Governments's intention to assume such the risk of a defective specification. (see *Neal & Co. v. U.S.* 19 Cl. Ct. 463 (1990) aff'd 945 F 2d 385 (1991). When these specifications are defective and the contractor expends incurs additional costs in an attempt to comply with them, the contractor is entitled to recover from the Government those additional costs. (see *Neal* supra).

There is little doubt that the Historical Data became part of the Specifications and that Volmar utilized the erroneous and/or misleading Historical Data to formulate its fixed price bid for the Line Items. The Contracting Officer in his letter of March 6, 2002 to Volmar (copy attached as Exhibit B) states the Historical Data is "an estimate provided to assist prospective contractors in the preparation of their bids". In fact, Volmar had no other source of data to prepare its bid for the Line Items. Exacerbating the situation was the fact that Volmar had requirements under the Contract to respond to each of the service calls within contractually mandated time frame and if it failed to so respond it was subject to "liquidated damages and other deductions permitted under this contract." (Section C.12.6 of the Contract)

Finally this matter is clearly distinguishable from *Service Technicians, Inc. v. U.S.* 37 Fed. Cl. 383 (1997) previously relied upon by the Government in prior discussions. First of all there is no indication that the Historical Data in that matter was incorporated into and became part of the specification as it did in this case. Second, given the substantial increase in the number of Service Calls from the original Solicitation, to the amended amounts in Amendment 0002, and then to the actual number of Service Calls incurred, it is clear that the estimate

provided by the Government and relied upon by Volmar was hastily and/or negligently prepared and/or was unreasonable inadequate, and by issuing such a defective specification the Government has assumed liability for all erroneous data. (see *Crown Laundry & Dry Cleaners, Inc. v. The U.S.* 29 Fed. Cl. 506 (1993). Lastly, the magnitude of the error of the Historical Data in this case which in some instances exceeds 230 % (see Exhibit A) which clearly eclipses the 23% to 39% error rate in Service Technicians.

## CALCULATION OF DAMAGES

Set forth on Exhibit C is the calculation of damages. The damages were calculated by determining the amount of Service Calls in each call category in excess of the Historical Data and multiplying that excess by a per call rate determined by dividing the relevant line item by the Historical Data for that line item. For example the line item 0001AY = $8750 (p/m) x 12/ 210 = $500.00. Where the actual number of Service Calls in a category did not exceed the Historical Data no calculation was made because Volmar still had to staff to meet that required level.

## CONCLUSION

By virtue of the foregoing Volmar is entitled to an equitable adjustment of the Contract Price in the amount of $227,633.00 plus interest and estimated claim preparation costs of $20,000.00.

Attached hereto as Exhibit D is the certification of this claim as provided for in FAR 33.207(c). Volmar hereby requests the Contracting Officer's final decision on this claim as provided for in FAR 33.211. Please be further advised that any failure to issue a decision within the required time period will be deemed a decision denying the claim and will authorize Volmar to file an appeal or suit on the claim.

Notwithstanding the foregoing, claim submittal, I would like to take this opportunity to express Volmar's readiness to negotiate a settlement of this matter consistent with the policy set forth in FAR 33.204.

If you need any further information or wish to establish a framework for negotiation, please contact either myself at (718) 832-2444 or my counsel, Gary Marcus at (516) 764-2800.

Very truly yours,

VOLMAR CONSTRUCTION CORP.

John P. Volandes
Vice President

# CERTIFICATION

I certify that the claim to which this is attached, is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Dated: February 12, 2004

VOLMAR CONSTRUCTION, INC.

By: ______________________
John P. Volandes, Vice-President

## SCHEDULE OF SERVICE CALLS
## CONTRACT NO. N6472-99-D5043-FACILITY HOUSING MAINTENANCE/REPAIR - MITCHELL FIELD

| Type of Service Call | Quantity in Original RFP | Quantity in Amendment 0002 | Base Year | Option Year I | Option Year II |
|---|---|---|---|---|---|
| Emergency | 39 | 210[439%] | 219(4.3%) | N/A | 75 |
| Urgent | 367 | 525[43%] | 793(51%) | 959(83%) | 1240(136%) |
| Routine | 1500 | 3100[106%] | 3201(3.3%) | N/A | N/A |

[ ] Percentage Change from Original RFP
( ) Percentage Change from Amendment 0002

DEPARTMENT OF THE NAVY
FACILITIES SUPPORT CONTRACT MANAGEMENT
BUILDING 135, BOX 400, CODE 805
NAVAL SUBMARINE BASE NEW LONDON
GROTON, CT 06349-5400

IN REPLY REFER TO:

N62472-99-D-5403
VC1012/jep/805
March 6, 2002
03732

Mr. John Volandes
Volmar Construction, Inc.
4400 Second Avenue
Brooklyn, NY 11232

Subj: N62472-99-D-5403 - FACILITIES AND HOUSING MAINTENANCE AND REPAIR – MITCHELL HOUSING COMPLEX, EAST MEADOW, NEW YORK

Dear Mr. Volandes,

I have reviewed your letter of February 11, 2002 and investigated the issues raised with John Peters and members of Engineering Field Activity, Northeast. Based on my investigation, the following is provided on your requests for equitable adjustment:

Extra service calls beyond the historical quantities bid on the contract. The main point of this request for equitable adjustment is that since your firm performed a greater number of service calls (routine, urgent and emergency) than was shown in the historical data, additional compensation is due to Volmar to account for the increased number of service calls. The Government disagrees with this argument, as the historical data shown in the bid documents does not represent a required level of performance that your firm had to meet. Rather, the historical data is merely an estimate provided to assist prospective contractors in the preparation of their bids. The invitation for bid (IFB) does not call out a specified number of service calls that Volmar is required to perform during the first year of the contract. Indeed, Section B of the contract, Supplies or Services and Prices/Costs, contains the following items:

> Item 0001 - FIRM FIXED-PRICE WORK: Price to perform work in accordance with the terms of this contract. The contract price is the sum of the contract sub-line items 0001AA through 0001BN.
>
> Item 0001AY – Emergency Service Calls 12 Mo. X ________
> Item 0001AZ – Urgent Service Calls 12 Mo. X ________
> Item 0001BA – Routine Service Calls 12 Mo. X ________

As is illustrated, the contract does not show any specific required quantities of service calls to be performed by Volmar. Instead, under the plain terms of the contract, Volmar agreed to accept a lump sum payment to perform all service calls required by the Navy at the Mitchell Housing Complex during a 12-month period. Contractors were not bound by the historical data to formulate their bids and were welcome to use alternate means of evaluating anticipated workload. Therefore, it is my determination that Volmar is not due any equitable adjustment for the number of service calls performed.

Wage Determination. This office has attempted on several occasions to obtain from your firm the information necessary to process a wage adjustment. Unfortunately, we have been unable to do so to this point. Contract specification Section G.6, page G-2 and Section H.29, pages H-9 through H-11, detail all the requirements for processing a wage adjustment for your contract. Per

the specifications, there are five types of documentation needed from your company to process a wage adjustment. They are:

1. Actual contract work hours per trade.
2. How and where these hours are applied.
3. Only Service Contract Act wages.
4. Documents supporting impact on Fringe Benefit Costs.
5. Documents supporting accompanying costs (payroll taxes).

Due to the ambiguities in your past monthly payroll submitted, the Government is requesting that a full year's worth of payrolls be made available for our review. This should not be a problem considering that a whole fiscal year has gone by and actual figures should be readily available to substantiate your requested increases. These payrolls must include a breakout of Regular, Indefinite Quantity, Vacations and Overtime hours paid in addition to above requirements. You may submit these payrolls to this office or make them available for review by an Audit Team that can visit your offices. It is not possible for the Government to accurately process a wage adjustment without the proper documentation. Continued failure on your firm's part to submit the required documentation will result in this office estimating the wage adjustment and unilaterally incorporating it into the contract.

If you have any questions, please contact J. E. Peters at (860) 694-4486.

Sincerely,

J. J. NESIUS
Lieutenant Commander
Civil Engineer Corps, U.S. Navy
Contracting Officer

### *Calculation Of Equitable Adjustment*
### *Contract No. N6472-99-D5043-Facility Housing Maintenance/ Repair*
### *Mitchell Field*

| Type of Service Call | Base Year<br>Excess Rates x Calls | Option Year I<br>Excess Calls x Rates | Option Year II<br>Excess Calls x Rates | Total |
|---|---|---|---|---|
| Emergency | 9x$500 = $4500 | N/A | N/A | 4,500 |
| Urgent | 268x$200=$53,600 | 434x$137=$59,458 | 715x$137=$97,955 | 211,013 |
| Routine | 101x$120=$12,120 | N/A | N/A | 12,120 |
| | $70,220 | $59,458 | $97,955 | $227,633 |

**Footnotes*

*1. Total Line Item Value/Number of Service Calls per Historical Data = Rate*
*2. $105,000 / 210 = $500*
*3. $105,000 / 525 = $200*
*4. $372,000 / 3100 = $120*
*5. $72,000 / 525 = $137*

**DEPARTMENT OF THE NAVY**
ENGINEERING FIELD ACTIVITY, NORTHEAST
NAVAL FACILITIES ENGINEERING COMMAND
10 INDUSTRIAL HIGHWAY
MAIL STOP, #82
LESTER, PA 19113-2090

IN REPLY REFER TO
4330
IPTC/IK
July 29, 2004

FINAL DECISION NO. 04-004F

Via Federal Express
Mr. John Volandes
Volmar Construction, Inc.
4400 Second Avenue
Brooklyn, NY 11232-4213

Dear Mr. Volandes:

SUBJECT: CONTRACT N62472-99-D-5403; FACILITIES AND HOUSING MAINTENANCE AND REPAIR - MITCHELL FIELD HOUSING COMPLEX, EAST MEADOW, NEW YORK

The Officer In Charge (OIC), NAVFAC Contracts, Naval Submarine Base, New London, Connecticut has forwarded to this office your request for a final decision under the above subject contract. This request for a final decision consists of your letter dated February 12, 2004, received February 19, 2004. You contend the contract contained erroneous and/or misleading information concerning the level of effort that would be required under certain fixed price portions of the Solicitation and the resultant Contract. The claim is in the amount of $227,633.00 plus interest and estimated claim preparation costs of $20,000.00.

After reviewing your claim and associated documents, the Contracting Officer makes the following findings of fact and determination:

This is a Combination Firm Fixed Priced/Indefinite Quantity Contract. Section H-**Special Contract Requirements**, clause H.22 entitled Combination Firm Fixed Price/Indefinite Quantity Contract (NAVFAC)(OCT 1996), paragraph a) states "This is a combination Firm Fixed Price/Indefinite Quantity contract for the supplies or services specified, and effective for the period stated in

4330
IPTC/IK
July 29, 2004

The schedule. Work items for the fixed price portion are identified in the schedule and include all work except that identified as Indefinite Quantity. The fixed price quantities shown in the Schedule are considered to be accurate estimates for this contact period".

Section C-**Description/Specification** of the contract, paragraph C.12.10 Historical states: "Data on the numbers and types of service calls of each classification that have historically been performed are included in Attachment J-C12.1".

Attachment J C.12.1 entitled Historical Data for Service Calls states: "The historical data in this attachment is taken from the activity records for the family housing assets to be maintained under this contract. This data is included to indicate the types and approximate order of magnitude in the workload". Amendment 0002 was issued revising this historical data under Attachment J-C12.1.

This historical data was provided to assist interested parties in formulating their bids and accurately depicted the service calls issued under the previous contract. We have reviewed the historical data provided and find it to be complete and accurate. By accepting the contract, you agreed to accept a lump sum payment of the prices set forth in your Schedule to perform all service calls required by the Navy at the Mitchell Field Housing Complex during each 12-month period as set forth in the bid schedule.

Based on the above your claim is without merit and is denied in its entirety. This is the Final Decision of the Contracting Officer. This decision may be appealed to the Armed Services Board of Contract Appeals, which is the authorized representative of the Secretary for hearing and determining contract disputes.

If you decide to appeal this decision, written notice thereof must be mailed or otherwise furnished to the Armed Services Board of Contract Appeals, 2Skyline Six, 5109

4330
IPTC/IK
July 29, 2004

Leesburg Pike, 7th Floor, Falls Church, VA 22041, within ninety days from the date you received this decision. A copy of that notice shall also be furnished to the Contracting Officer from whose decision the appeal is taken, at the address set forth at the head of this letter, Attention: Director, Contracts Department. The notice should indicate that an appeal is intended, should reference this decision, identify the contract by number, and state the amount in dispute. The rules of procedure of the Armed Services Board of Contract Appeals are in the DFAR, Appendix A, Part Two. Optional Accelerated Procedures are available in appeals involving $50K or less. Small Claims (expedited) procedures are available in appeals involving $10K or less. In lieu of appealing to the Armed Services Board of Contracts Appeals, you may bring action directly in the U. S. Federal Court of Claims within 12 months of the date you receive this decision (except as provided in Section 4 of the Act (Maritme Contracts)).

Sincerely,

Marilyn Colot
Contracting Officer
By Direction of the
Commanding Officer